IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHRISTINE WILLIAMS,

    Plaintiff,

vs.                            No. 1:13-cv-00136-JAP/ACT

CITY OF ALBUQUERQUE and THE BOARD
OF COUNTY COMMISSIONERS OF
BERNALILLO COUNTY, NEW MEXICO,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

On March 20, 2013, Defendant City of Albuquerque ("Albuquerque") moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Christine Williams' Count III claim under 28 U.S.C. Section 1983 asserted against Albuquerque in Ms. Williams' COMPLAINT FOR DAMAGES (Doc. No. 1-2) ("Complaint"). *See* DEFENDANT CITY OF ALBUQUERQUE'S MOTION AND MEMORANDUM TO DISMISS ALL *MONELL* CLAIMS ASSERTED IN THE COMPLAINT (Doc. No. 15) ("Albuquerque Motion to Dismiss"). On April 22, 2013, Defendant Board of County Commissioners of Bernalillo County, New Mexico ("Bernalillo County") also moved under Rule 12(b)(6) to dismiss Ms. Williams' Section 1983 claim against Bernalillo County. *See* BERNALILLO COUNTY'S MOTION TO DISMISS NO. I: DISMISSAL OF PLAINTIFF'S MUNICIPAL LIABILITY CLAIMS AGAINST BERNALILLO COUNTY (Doc. No. 17) ("Bernalillo County Motion to Dismiss").[1] On April 25, 2013, Ms. Williams responded to the Motions to Dismiss. *See* PLAINTIFF'S OPPOSITION TO THE MOTIONS TO DISMISS OF DEFENDANT CITY AND

---

[1] When discussing Albuquerque and Bernalillo County collectively, the Court will refer to them as "Defendants." Similarly, when discussing the Albuquerque Motion to Dismiss and Bernalillo County Motion to Dismiss collectively, the Court will refer to "the Motions to Dismiss."

DEFENDANT COUNTY (Doc. No. 18) ("Response").[2] Ms. Williams argues that she should be

allowed to conduct discovery in order to locate "facts to show that a custom or practice or lack of

training caused the conduct which resulted in her injuries." *Id.* at 1. Ms. Williams asks the Court to

deny the Motions to Dismiss, to allow discovery, or, alternatively, to hold the Motions to Dismiss "in

abeyance until after discovery has been completed." *Id.*

The Court concludes that Ms. Williams has failed to state a Section 1983 claim against either

Albuquerque or Bernalillo County. Therefore, the Court will dismiss Count III of Ms. Williams'

Complaint with prejudice. The Court will also decline supplementary jurisdiction over Ms. Williams'

remaining claims, which are asserted under state law. Instead, the Court will remand those claims to

the state court where Ms. Williams originally filed them.

## BACKGROUND

The Court assumes the following allegations from Ms. Williams' Complaint to be true for the

purposes of the Court's ruling on the Motions to Dismiss.

Ms. Williams is a resident of Albuquerque and of Bernalillo County. *See* Complaint ¶ 1. On

February 28, 2011, employees or agents of Defendants arrived at Ms. Williams' home in Albuquerque.

*See id.* ¶ 8. Defendants' employees indicated to Ms. Williams that they had bench warrants for her

arrest due to traffic offenses for which she had not appeared in court. *See id.* ¶¶ 9, 11. The municipal

employees then took Ms. Williams into custody and transported her to the jail in downtown

Albuquerque. *See id.* ¶ 10. At this jail, different municipal employees changed the handcuffs with

which Ms. Williams was restrained. *See id.* 12. These new handcuffs "constricted the blood flow"

going to Ms. Williams' hands, and although she requested that the handcuffs be loosened or replaced

---

[2] The Response was not timely with respect to the Albuquerque Motion to Dismiss; indeed, Albuquerque had filed a NOTICE OF COMPLETION OF BRIEFING on its Motion to Dismiss before Ms. Williams filed the Response. *See* Doc. No. 16. However, Ms. Williams asserts that "Defendant City's attorney agreed to Plaintiff filing this Opposition brief on its motion by April 25 due to an email problem which caused Plaintiff's counsel to not be aware of the City's motion until on or about April 15, 2013." Response at 1, n.1.

with double cuffs, Defendants' employees did not adjust the handcuffs. *Id.* ¶¶ 12-15. Ms. Williams has

a stocky frame, and says that it "should have been apparent to a reasonable observer that her hands did

not meet behind her back" as is necessary for a single set of handcuffs. *Id.* ¶ 14.

Next, Defendants' employees placed Ms. Williams in a van with other detainees in order to

transport them all to Albuquerque's Metropolitan Detention Center ("MDC"). *See id.* ¶¶ 15-16. By this

time, because the handcuffs were restricting blood flow, Ms. Williams' "wrists and hands had turned

purple." *Id.* ¶ 15. The van driver then "drove the vehicle in such a reckless manner that all the

passengers were screaming for him to stop." *Id.* ¶ 16. The recklessness of the driving meant that Ms.

Williams "had to hold onto the restraint behind her back in an effort to not be thrown around the van,"

and the resulting position further injured her wrists and hands. *Id.* ¶¶ 16-17.

Once Ms. Williams arrived at the MDC, Defendants' employees removed her handcuffs, but

although Ms. Williams "hands were purple and had no feeling in them, the Defendants' medical

personnel provided no treatment" to her. *Id.* ¶ 18. Ms. Williams also informed these medical personnel

"that she suffered from chronic back pain, was suffering severe back pain at that time," was also

suffering from high blood pressure, and needed medication for both conditions. *Id.* ¶¶ 19-20. However,

Defendants' employees only provided Ms. Williams with an antidepressant. *See id.* ¶ 21.

Ms. Williams had a court appearance by monitor on March 1, 2011. At that time, she informed

one of Defendants' officers at the MDC "that her hands were injured and numb." *Id.* ¶ 22. Despite this,

Defendants' officer refused to provide any help to Ms. Williams, saying that "there was no time for

medical attention because [Ms. Williams] had to be downtown for court at 1:30 pm." *Id.* Later, while

in the MDC's holding area, Ms. Williams again asked Defendants' employees "to loosen her handcuffs

or install a double handcuff," but Defendants' employees refused to accommodate her. *Id.* ¶ 23. After

arriving at her next destination, a different officer employed by Defendants observed "the serious

condition" of Ms. Williams' hands due to the handcuffs, and he removed the handcuffs. *Id.* ¶ 24.

However, when Ms. Williams had to be re-handcuffed when returning to the MDC, yet another of

Defendants' officers "refused to use double handcuffs," so Ms. Williams at first would not board the

van. *Id.* ¶ 25. A different driver employed by Defendants then procured a second set of handcuffs to

use for Ms. Williams. *See id.* Back at the MDC, Ms. Williams repeatedly asked Defendants' medical

personnel for medication for her back and blood pressure conditions, but Defendants' medical

personnel did not give Ms. Williams any medication for these issues. *See id.* ¶ 26.

Ms. Williams was released from detention on March 3, 2011. *See id.* ¶ 27. By this time, she had

not taken her medication for back pain and blood pressure since the morning of February 28, 2011,

when she was at home. *See id.* ¶ 27. Upon release, Ms. Williams immediately sought care at an

emergency room in Albuquerque. *See id.* ¶ 28. Emergency room staff found Ms. Williams' blood

pressure to be so high that they conducted "an EKG to see whether [her] heart had been damaged." *Id.*

Hospital personnel also conducted an x-ray of Ms. Williams' hand and wrist, which revealed a

contusion. *See id.* ¶ 29. Ms. Williams later went to her own physician, "who diagnosed possible injury

to a tendon" in Ms. Williams' hand and sent her to an orthopedic specialist, who operated on the hand

on May 5, 2011. *Id.* ¶ 30. Ms. Williams later underwent another surgery on her hand and wrist. She has

required medical care for the injury ever since her release from Defendants' custody. *See id.* at ¶¶31-

33. She "will likely suffer pain and weakness in her right hand for the rest of her life." *Id.* ¶ 34.

On May 12, 2011, Ms. Williams mailed notices of her tort claim to both Defendants. *See id.* ¶¶

5-6. On December 17, 2012, Ms. Williams filed an action against Defendants in state court, the Second

Judicial District, County of Bernalillo. *See id.* at 1. On February 8, 2013, Bernalillo County removed

the case to this Court, citing Ms. Williams' claim under Section 1983 as the basis for federal court

jurisdiction. *See* NOTICE OF REMOVAL (Doc. No. 1) at 2.

## DISCUSSION

### A.  Ms. Williams' Amended Complaint

On June 14, 2013, Ms. Williams filed an AMENDED COMPLAINT FOR DAMAGES (Doc.

No. 30) ("Amended Complaint"). Under Federal Rule of Civil Procedure 15(a)(1)(B), a party may

amend a complaint "to which a responsive pleading is required, 21 days after service of a responsive

pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), *whichever is earlier.*" Fed.

R. Civ. P. 15(a)(1)(B) (emphasis added). DEFENDANT CITY OF ALBUQUERQUE'S ANSWER TO

PLAINTIFF'S COMPLAINT FOR DAMAGES (Doc. No. 9) was filed on February 12, 2013 and

COUNTY DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DAMAGES (Doc. No.

10) was filed on February 15, 2013. Defendants filed the Motions to Dismiss in March and April of

2013. Therefore, under Rule 15(a)(1)(B), the Court uses the Answers as the "earlier" date from which

to calculate the deadline for amendments as of right. As a result, this deadline is 21 days from either

February 12, 2013, or February 15, 2013. Even using the later of these two dates, Ms. Williams was

required to file her Amended Complaint by March 8, 2013. Otherwise, under Rule 15(a)(2), she was

required to obtain "the opposing party's written consent or the court's leave." Although in her

Response Ms. Williams indicated that she would "be amending her Complaint to name specific

employees whom she alleges caused her harm," Ms. Williams never sought the Court's or opposing

counsel's leave to amend her Complaint. *See* Response at 2, n.2. Therefore, the Court will disregard

the Amended Complaint in its discussion of the Motions to Dismiss, and will dismiss the Amended

Complaint without prejudice.[3]

## B. Legal Standard for Motions to Dismiss Under Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6). "Generally, the sufficiency of a complaint must rest on its contents alone,"

without consideration of additional materials that may already be in the parties' possession or that may

be produced in discovery. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing, e.g.,

*Casanova v. Ulibarri,* 595 F.3d 1120, 1125 (10th Cir. 2010)). The Supreme Court has articulated a

---

[3] Though the Court generally disregards the Amended Complaint, the Court also pauses to note that the Amended Complaint still alleges no official policy, custom, or practice by Defendants, despite adding individuals as defendants. Therefore, as discussed below, because *respondeat superior* liability is not available for *Monell* claims, Ms. Williams' Amended Complaint would still fail, at least regarding the liability of the present Defendants.

two-step approach for district courts to use when considering a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court should identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* That is, a plaintiff's complaint must set forth more than a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. The plaintiff cannot merely use "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). "This standard does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Next, having identified the adequately pleaded claims, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. A claim is facially plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility lies somewhere between possibility and probability; a complaint's "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Okla.,* 519 F.3d 1242, 1247 (10th Cir. 2008). That is, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Gee*, 627 F.3d at 1185 (emphasizing *Iqbal*'s discussion of context's importance in the plausibility determination).

    **C.**  **Law Regarding Claims Under *Monell v. Department of Social Services***

The Supreme Court's landmark *Iqbal* case increased the requirements for a plaintiff pleading claims of *supervisory* liability, but *Iqbal* did not "change[] the 'longstanding interpretation' of § 1983's standards for imposing *municipal* liability." *Schneider v. City of Grand Junction Police Dep't*, No. 12-1086, 2013 WL 2421071 at *7 (10th Cir. June 5, 2013) (quoting *Dodds v. Richardson*, 614 F.3d 1184, 1202 (10th Cir. 2010) (emphasis added). That interpretation originated in *Monell v. Department of Social Services*, where the Supreme Court held that municipalities may be held liable under § 1983, but that a plaintiff must identify "a government's policy or custom" that caused the injury. 436 U.S. 658, 691-92 (1978). Subsequent Supreme Court cases indicated that a plaintiff with claims against a municipality must also "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider* at *7 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986). The resulting standard requires a plaintiff asserting municipal liability to plead and prove "three elements: (1) official policy or custom, (2) causation, and (3) state of mind." *Schneider* at *7.

The first element of the *Monell* standard may be satisfied in several ways. First, of course, if there is an actual written policy or regulation that approves or leads to unconstitutional conduct, this will meet the standard quite easily. If there is no written or formal regulation or policy statement, liability may be based on an informal "custom" observed by the defendant municipality, but only if the custom amounts to "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.' " *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). "Municipal liability may be also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the

7

decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval. Finally, municipal liability may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188-89 (10th Cir. 2010) (citing *Pembaur,* 475 U.S. at 480-81; *Praprotnik*, 485 U.S. at 123-27; *City of Canton*, 489 U.S. at 388-91) (internal citations omitted). Importantly, the "official policy" requirement is in place "to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479.

Of course, it is not enough for a plaintiff merely to show that such a policy or custom existed in a municipality or within its ranks. As noted, the other extended *Monell* standard also requires plaintiffs with claims against municipalities "[1] must show that the municipal action [based on the policy or custom] was taken with the requisite degree of culpability and [2] must demonstrate a *direct causal link* between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404 (emphasis added). As a whole, the *Monell* line of cases stands "for the proposition that the very language of § 1983 provides for the imposition of liability where there exists an 'affirmative' or 'direct causal' link between a municipal person's adoption or implementation of a policy and a deprivation of federally protected rights, and that imposing liability upon such a basis does not implicate *respondeat superior.*" *Dodds*, 614 F.3d at 1202; *see also Milligan-Hitt v. Bd. of Trustees of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1223 (10th Cir. 2008) ("Section 1983 . . . rejects the tort principle of *respondeat superior* and does not subject municipalities to vicarious liability for the acts of their employees."). If a municipality has in place an unconstitutional official policy or custom, and its employees act in accordance with that policy or custom, "their actions can be fairly said to be the municipality's. But when [municipal employees] act inconsistently with official policy or custom, though perhaps even still within the scope of employment, that will not suffice [for municipal § 1983

8

liability]. As the Supreme Court in *Pembaur* explained, when passing Section 1983, 'Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, [but] Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others*.'" *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1284-85 (10th Cir. 2007) (quoting *Pembaur*, 475 U.S. at 479) (emphasis in original).

### D.  The Parties' Arguments

Though they filed separate briefs, Defendants both argue essentially the same thing: that Ms. Williams "has not set forth any factual allegations supporting her *Monell* claim alleging establishing official . . . policies, procedures, practices [or] customs that violated her constitutional rights." Albuquerque Motion to Dismiss at 3; *see also* Bernalillo County Motion to Dismiss at 2. In short, Defendants both argue, Ms. Williams' "claims are based solely upon a theory of *respondeat superior* or vicarious liability." Bernalillo County Motion to Dismiss at 2; *see also* Albuquerque Motion to Dismiss at 5. Albuquerque notes that although Ms. Williams makes a number of factual allegations in support of her Complaint, and some of the allegations relate specifically to Albuquerque, "none of these allegations refer to any constitutional injury inflicted pursuant to government policy or custom." Albuquerque Motion to Dismiss at 4. Bernalillo County also contends that Ms. Williams "has failed to allege any facts sufficient to support the inference that Bernalillo County's actions or inactions reflect a deliberate or conscious choice resulting in violation of [Ms. Williams'] constitutional rights. Moreover, [Ms. Williams] has failed to allege any facts sufficient to support a claim, or even give the inference, of personal direction or of actual knowledge and acquiescence in an alleged constitutional deprivation by a Bernalillo County supervisor." Bernalillo County Motion to Dismiss at 10-11.

Ms. Williams' Response acknowledges the *Monell* standard, but argues that "[t]he Federal Rules of Civil Procedure require only notice pleading" and that Section 1983 claims against municipalities cannot, under Supreme Court precedent, be held to a higher standard of pleading. Response at 2 (citing *Leatherman v. Tarrant Cnty. Narcotics*, 507 U.S. 163 (1993)). Ms. Williams

asserts that her Complaint "puts the Defendants sufficiently on notice of the circumstances giving rise

to [her] injury; namely, that the policy the Defendants have in place or the practice as implemented

with respect to the handcuffing of prisoners of stocky build violates the individual's rights, that their

medical intake process in practice does not protect the medication needs of prisoners, and that their

method of transporting prisoners long-distance in a van causes harm to the persons being transported."

*Id.* at 3. Ms. Williams believes that "fundamental fairness in this process requires that these pre-

discovery Motions to Dismiss . . . not be acted upon by the Court absent adequate discovery in this

case" because she "has no way except through the discovery process to discover facts to show that a

custom or practice or lack of training caused the conduct which resulted in her injuries." *Id.*

Bernalillo County replies[4] by asserting that Ms. Williams "forgets the stated purpose of a

motion[] to dismiss under Fed. R. Civ. P. 12(b)(6), which is to test the 'legal sufficiency of the

allegations contained within the four corners of the complaint.'" BERNALILLO COUNTY'S REPLY

TO PLAINTIFFS' RESPONSE TO THE MOTION TO DISMISS NO. I: DISMISSAL OF

PLAINTIFF'S MUNICIPAL LIABILITY CLAIMS AGAINST BERNALILLO COUNTY (Doc. No.

21) ("Reply") at 3 (quoting *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995)). Bernalillo County

further notes that in this process the Court does not consider what *might* be produced at discovery, but

whether the "complaint *alone* is legally sufficient to state a claim for which relief may be granted." *Id.*

(quoting *Miller v. Glanz*, 948 F.3d 1562, 1565 (10th Cir. 1991) (emphasis added in brief)). Regarding

Ms. Williams' protest that complaints against municipalities are not to be held to a higher standard,

Bernalillo County acknowledges that this is true, but points out that that "there are still basic elements

that [Ms. Williams] must plead for her municipal liability claim." *Id.* at 7 (citing *Niemyjsky v. City of

Albuquerque*, 379 F.Supp.2d 1221, 1229 (D. N.M. 2005) (plaintiffs must allege both a constitutional

---

[4] Albuquerque did not file a Reply, having already filed a NOTICE OF COMPLETION OF
BRIEFING when Ms. Williams had not timely filed her Response. *See* Doc. No. 16. As noted above,
Ms. Williams says that Albuquerque's attorney indicated that Ms. Williams could reply to
Albuquerque's Motion to Dismiss late because of an email issue. *See* Response at 1, n.1. In any event,
Bernalillo County's Reply adequately responds to the issues raised in Ms. Williams' Response.

violation by a municipal employee and that "a municipal policy or custom was the moving force"

behind the violation")). Bernalillo County also suggests that Tenth Circuit precedent indicates that if

Ms. Williams were to name specific employees of the accused municipalities in an amended

complaint, a heightened standard *may* in fact be required. *Id.* at 7-8 (citing *Givens v. Glickman*, 139

F.3d 911 (10th Cir. 1998) (not published)).[5]

### E.  Ms. Williams Alleges No Municipal Custom or Policy Violating Her Rights

Even on the most generous reading of Ms. Williams' Complaint, the Court finds that she has

not alleged that Defendants have any official policy or custom, written or otherwise, requiring or

condoning the kinds of behavior she experienced while in custody. In fact, judging by the Complaint, it

seems that there was not even consistent behavior by Defendants' employees allegedly injuring Ms.

Williams, which might give rise to an inference of custom. For instance, Ms. Williams complains

about several officers or sets of officers employed by Defendants who, she says, should have seen that

a single set of handcuffs would not properly fit her, and in disregarding that fact and insisting on using

a single set of handcuffs, injured her. *See* Complaint ¶¶ 12-14. However, the officers who originally

took her into custody apparently placed the handcuffs so as not to hurt her, because it was only after

Ms. Williams arrived at the detention center that other employees of Defendants "placed handcuffs on

[Ms. Williams] in a fashion which constricted the blood flow to [her] hands." Ms. Williams also notes

that an older officer at one of the detention centers saw her in pain and distress, and removed the

handcuffs. *See id.* ¶ 24. And Ms. Williams says that a different employee, in another detention center,

provided her with a second set of handcuffs when she complained. *See id.* ¶ 25. Not only do these

---

[5] Bernalillo County devotes much of its Reply to objections like this one that respond to Ms. Williams'
indication in her Response she intended to file an Amended Complaint. As the Court has already
discussed, Ms. Williams has in fact now filed an Amended Complaint, but because of its extreme
untimeliness (if she were to file as of right) and her failure to move for leave to file it, the Court will
disregard the Amended Complaint, and will not discuss Bernalillo County's arguments regarding the
merits of any amendments (which, at the time of the Reply, were hypothetical).

allegations not include any indication of an official policy, it is clear that Ms. Williams did not even experience a uniform practice, at least regarding the handcuffing, while in Defendants' custody.

The issue in this case is not really whether some of Defendants' employees may have violated Ms. Williams' rights. Rather, the issue is whether Ms. Williams has alleged that Defendants have an official policy or custom in place condoning the kind of rights-violating behavior that Ms. Williams alleges she experienced. Without allegations of such an official custom or policy, the Complaint does not state a claim for which relief can be granted, because, as discussed, *respondeat superior* liability does not exist for Section 1983 claims. Defendants cannot be held liable for their employees' misdeeds unless Defendants have in place an official policy or custom that requires or gives rise to such misdeeds. Ms. Williams asserts that her Complaint "puts the Defendants sufficiently on notice of the circumstances giving rise to [her] injury," and that she has alleged a "policy . . . [or] practice as implemented with respect to the handcuffing of prisoners of stocky build" as well as with respect to the detention center medical intake process and the prisoner transportation system. Reply at 3. The Court disagrees. A reasonable reading of the Complaint would not put anyone on notice of such a claim. The Complaint merely contends that some individual employees of Defendants, working at some detention centers operated by Defendants, violated Ms. Williams' rights. Such allegations do not amount to charges of an official "policy or practice" by Defendants of violating prisoners' rights.

Ms. Williams' argument that she needs to use the discovery process to gather facts about such a policy or practice is unavailing. The discovery process is not a fishing expedition; rather, parties may use discovery to support claims that are already included in a complaint. As noted, Rule 12(b)(6) motions to dismiss are generally decided on the basis of what is contained within the four corners of the complaint, without the benefit of discovery. If Ms. Williams believed that Defendants had an official policy or custom that led to her injuries while in their custody, and had alleged so in her Complaint, the discovery process would then be the proper avenue for gathering facts to support those allegations. But as Defendants point out, a motion to dismiss under Rule 12(b)(6) asks the Court to

evaluate whether a plaintiff has properly stated a claim, not "what evidence [the plaintiff] intends to obtain and eventually present at trial." Reply at 3. Because Ms. Williams' Complaint only alleges that individual employees of Defendants violated her rights, and § 1983 does not recognize *respondeat superior* liability, Ms. Williams' Complaint does not state a cognizable claim under § 1983. Therefore, the Court will dismiss Count III of the Complaint without prejudice.

**F.   The Court Declines to Exercise Jurisdiction Over Ms. Williams' State Claims**

Ms. Williams also asserts state-law claims of negligence and battery against Defendants. *See* Complaint at 6. The Court has jurisdiction over Ms. Williams' state-law claims by virtue of 28 U.S.C. § 1367(a), which gives district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Ms. Williams' negligence and battery claims are based on the same conduct underlying her Section 1983 claim, so the Court could properly exercise jurisdiction over them. However, a district court "may decline to exercise supplemental jurisdiction" in some circumstances, including when the state-law claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction, the district court has dismissed all claims over which it has original jurisdiction, or . . . there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). In deciding whether to decline or exercise jurisdiction, the district court is to consider "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan.*, 582 F.3d 1155, 1172 (10th Cir. 2009) (explaining factors guiding district court discretion under § 1367(c)). "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011), *cert. denied,* 133 S. Ct. 211 (2012), *reh'g denied*, 133 S. Ct. 684 (2012) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998). This is, at least in part, because "[n]otions of comity and federalism demand that a state court try its

own lawsuits, absent compelling reasons to the contrary." *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (quoting *Thatcher Enters. v. Cache Cnty. Corp.,* 902 F.2d 1472, 1478 (10th Cir. 1990)).

Here, after the Court dismisses Ms. Williams' Section 1983 claim, the only remaining claims are Ms. Williams' state-law claims against Defendants, and the Court finds that it may properly decline to exercise supplemental federal jurisdiction over those claims in accordance with 28 U.S.C. § 1367(c)(3). Because this case was not originally filed in federal court, but was removed from state court, the Court has the option of remanding the case to that same state court. *See Carnegie-Mellon Univ.,* 484 U.S. at 357 ("[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate."). In this case, the Court finds that an order of remand, rather than dismissal, "best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine," because of the two-year statute of limitations that would likely bar at least some of Ms. Williams' claims under the New Mexico Tort Claims Act if she had to refile. *Id.*; *see also* N.M. Stat. Ann. 1978 § 41-4-15(A). Therefore, Ms. Williams' state-law claims of negligence and battery will be remanded to the state court from which they were removed, which is the Second Judicial District Court, County of Bernalillo, New Mexico.

**IT IS ORDERED THAT:**

(1) DEFENDANT CITY OF ALBUQUERQUE'S MOTION AND MEMORANDUM TO DISMISS ALL *MONELL* CLAIMS ASSERTED IN THE COMPLAINT (Doc. No. 15) IS GRANTED, AND THE CLAIM AGAINST DEFENDANT IN COUNT III OF PLAINTIFF CHRISTINE WILLIAMS' COMPLAINT FOR DAMAGES (Doc. No. 1-2) WILL BE DISMISSED WITHOUT PREJUDICE.

(2) DEFENDANT BOARD OF COUNTY COMMISSIONERS OF BERNALILLO COUNTY, NEW MEXICO'S MOTION TO DISMISS NO. I: DISMISSAL OF PLAINTIFF'S

MUNICIPAL LIABILITY CLAIMS AGAINST BERNALILLO COUNTY (Doc. No. 17) IS

GRANTED, AND THE CLAIM AGAINST DEFENDANT IN COUNT III OF PLAINTIFF

CHRISTINE WILLIAMS' COMPLAINT FOR DAMAGES (Doc. No. 1-2) WILL BE

DISMISSED WITHOUT PREJUDICE.

(3) PLAINTIFF CHRISTINE WILLIAMS' UNITMELY AND INAPPROPRIATELY FILED

AMENDED COMPLAINT FOR DAMAGES (Doc. No. 30) WILL BE DISMISSED

WITHOUT PREJUDICE.

(4) PLAINTIFF CHRISTINE WILLIAMS' STATE LAW CLAIMS WILL BE REMANDED TO

THE SECOND JUDICIAL DISTRICT, COUNTY OF BERNALILLO.


_____

SENIOR UNITED STATES DISTRICT JUDGE

15